Slip Op. 21-90

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SHELTER FOREST INTERNATIONAL ACQUISITION, INC., ET AL., | |
| Plaintiffs, and | |
| IKEA SUPPLY AG, | Before: Jane A. Restani, Judge |
| Consolidated Plaintiff, and | Consol. Court No. 19-00212 |
| TARACA PACIFIC, INC. ET AL., | |
| Plaintiff-Intervenors, | |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD, | |
| Defendant-Intervenor. | |

**OPINION**

[Commerce's Remand Results concluding that inquiry merchandise does not constitute later-developed merchandise circumventing the Orders under 19 U.S.C § 1677j(d) is sustained.]

Dated: July 21, 2021

    Daniel L. Porter, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, DC, for Plaintiffs Shelter Forest International Acquisition, Inc., Xuzhou Shelter Import & Export Co., Ltd., and Shandong Shelter Forest Products Co., Ltd. With him on the brief was James P. Durling.

Kristen S. Smith and Sarah E. Yuskaitis, Sandler, Travis & Rosenberg, PA of Washington, DC, for Consolidated Plaintiff IKEA Supply AG.

Jeffrey S. Grimson, Mowry & Grimson, PLLC, of Washington, DC, for Plaintiff-Intervenors Taraca Pacific, Inc., Liberty Woods International, Inc., MJB Wood Group, Inc., and Patriot Timber Products, Inc. With him on the brief were Bryan P. Cenko and Jill A. Cramer.

Gregory S. Menegaz, deKieffer & Horgan, PLLC, of Washington, DC, for Plaintiff-Intervenors Shanghai Futuwood Trading Co., Ltd., Linyi Glary Plywood Co., Ltd., and Far East American, Inc. With him on the brief were J. Kevin Horgan and Alexandra H. Salzman.

Sonia M. Orfield, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the Defendant. With her on the brief was Savannah R. Maxwell, Of Counsel, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Timothy C. Brightbill, Wiley Rein LLP, of Washington, DC, for Defendant-Intervenor Coalition for Fair Trade in Hardwood Plywood. With him on the brief were Elizabeth S. Lee, Stephanie M. Bell, and Tessa V. Capeloto.

Restani, Judge: This action concerns the United States Department of Commerce's ("Commerce") remand redetermination that certain merchandise is not circumventing the antidumping and countervailing duty orders on hardwood plywood from China under 19 U.S.C § 1677j(d). Before the court is Commerce's Final Results of Redetermination Pursuant to Court Remand, ECF No. 81 (May 10, 2021) ("Remand Results") following the court's opinion and order in Shelter Forest Int'l Acquisition, Inc. v. United States, 45 CIT ___, 497 F. Supp. 3d 1388 (2021) ("Remand Order"). Defendant-Intervenor, the Coalition for Fair Trade in Hardwood Plywood (the "Coalition"), challenges Commerce's negative determination as unsupported by substantial evidence and not in accordance with law.[1] The Government and Consolidated Plaintiffs, Shelter Forest International Acquisition Inc., et. al. ("Shelter Forest") and IKEA Supply AG., et al. ("IKEA"), and Plaintiff-Intervenors, Shanghai Futuwood Trading Co., et. al.

---

[1] See Def. Intervenor's Cmts. On Final Results of Redetermination Pursuant to Ct. Remand, ECF No. 85 (confidential), 86 (public), at 5−14 (June 4, 2021) ("Coalition Br.").

("Futuwood") and Taraca Pacific Inc., et al. (the "Importer's Alliance"), ask that the court sustain Commerce's negative anticircumvention determination as supported by substantial evidence.[2]

## BACKGROUND

The court presumes familiarity with the facts of this case and recounts them only as necessary. Commerce issued orders on certain hardwood plywood products from China in January 2018. In relevant part, the Orders[3] cover:

> …hardwood and decorative plywood, and certain veneered panels as described below. For purposes of this proceeding, hardwood and decorative plywood is defined as a generally flat, multilayered plywood or other veneered panel, consisting of two or more layers or plies of wood veneers and a core, with the face and/or back veneer made of non-coniferous wood (hardwood) or bamboo. The veneers, along with the core may be glued or otherwise bonded together. …
>
> …For purposes of [the Orders,] a "veneer" is a slice of wood regardless of thickness which is cut, sliced or sawed from a log, bolt, or flitch. The face and back veneers are the outermost veneer of wood on either side of the core irrespective of additional surface coatings or covers as described below. The core of hardwood and decorative plywood consists of the layer or layers of one or more material(s) that are situated between the face and back veneers. The core

---

[2] See Def.'s Response to Cmts. On Remand Redetermination, ECF No. 90 (June 16, 2021) ("Gov. Br."); Shelter Forest Cmts. in Supp. of Commerce's Remand Redetermination Results, ECF No. 83 (June 4, 2021); Shelter Forest Response Cmts. In Supp. of Commerce's Remand Redetermination Results, ECF No. 91 (June 16, 2021) ("Shelter Forest Reply"); IKEA Supply AG. Response Cmts. In Supp. of Remand Redetermination, ECF No. 93 (June 16, 2021) ("IKEA Reply"); Importer's Alliance Response to Cmts. On Final Remand Redetermination, ECF No. 88 (June 16, 2021) ("Importer's Alliance Reply"); Futuwood Response Cmts. In Supp. of Remand Redetermination, ECF No. 89 (June 16, 2021) ("Futuwood Reply"). Unless addressing an argument specific only to a certain plaintiff or plaintiff-intervenor, this opinion refers to Consolidated Plaintiffs and Plaintiff-Intervenors collectively as "Plaintiffs."

[3] See Certain Hardwood Plywood Products from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order, 83 Fed. Reg. 504 (Dep't Commerce Jan. 4, 2018) ("AD Order"); Certain Hardwood Plywood Products from the People's Republic of China: Countervailing Duty Order, 83 Fed. Reg. 513 (Dep't Commerce Jan. 4, 2018) ("CVD Order") (collectively, the "Orders").

    may be composed of a range of materials, including but not limited to hardwood, softwood, particleboard, or medium-density fiberboard (MDF).

AD Order, 83 Fed. Reg. at 512; CVD Order, 83 Fed. Reg. at 515. The Coalition requested that Commerce conduct an anticircumvention inquiry, see Letter from Petitioner, Certain Hardwood Plywood Products from the People's Republic of China: Request for Anti-Circumvention Inquiry at 2–4, P.R. 1–4 (June 26, 2018) ("Petitioner's Request"), and in September 2018, Commerce initiated this inquiry pursuant to 19 U.S.C. § 1677j(d) with respect to allegedly later-developed merchandise. See Certain Hardwood Plywood Products from the People's Republic of China: Initiation of Anti-Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders, 83 Fed. Reg. 47,883 (Dep't Commerce Sept. 21, 2018) ("Initiation Notice"). This inquiry sought to determine whether: (1) certain plywood with face and back veneers made of radiata and/or agathis pine, (2) "[h]as a Toxic Substances Control Act (TSCA) or California Air Resources Board (CARB) label certifying that it is compliant with TSCA/CARB requirements; and (3) is made with a resin, the majority of which is comprised of one or more of the following three product types—urea formaldehyde, polyvinyl acetate, and/or soy" ("inquiry merchandise") is later-developed merchandise circumventing the Orders. Id. at 47,883, 47,885.

    In November 2019, Commerce issued a final determination, finding circumvention of the Orders because no respondent had shown inquiry merchandise was commercially available prior to December 8, 2016. See Certain Hardwood Plywood Products from the People's Republic of China: Affirmative Final Determination of Circumvention of Antidumping and Countervailing Duty Orders, 84 Fed. Reg. at 65,783 (Dep't Commerce Nov. 29, 2019) ("Final Determination"); Issues and Decision Memorandum for the Final Determination of the Anti-Circumvention Inquiry: Certain Hardwood Plywood Products from the People's Republic of China, A-570-051, C-570-052, P.R. 240 at 36, 44 (Dep't Commerce Nov. 22, 2019) ("I & D Memo"). Specifically,

Commerce determined that while Shelter Forest had sold products with two of the three characteristics of inquiry merchandise (plywood with radiata veneers with a CARB-certification label), it had failed to demonstrate that the glue used in this product was majority urea-formaldehyde and therefore, failed to satisfy the third criteria of inquiry merchandise. I & D Memo at 24–25. Plaintiffs challenged Commerce's affirmative determination as unsupported by substantial evidence and not in accordance with law. See Remand Order at 1395. The court remanded for Commerce to consider, among other things, additional information from Shelter Forest, and to address or reconsider: (1) whether Commerce may accept other evidence indicating TSCA or CARB product compliance or otherwise explain why evidence of actual labels is required for its assessment, (2) the evidence Commerce requires with regard to the glue formulation used to produce inquiry merchandise, (3) lack of notice of identified deficiencies and an opportunity to submit supplemental information, (4) allowing Lianyungang Yuantai International Co., Ltd. ("Yuantai") an opportunity to correct or explain a translation error in submitted documentation, and (5) IKEA's rebuttal brief. See Remand Order at 1396–1402, 1405–06.[4]

On remand, Commerce reviewed the additional information provided by Shelter Forest and determined that inquiry merchandise was available prior to December 8, 2016, and therefore,

---

[4] If Commerce continued to find circumvention on remand, the court also directed Commerce to consider whether its application of the China-wide rate as the cash deposit rate was reasonable, to amend the date of initiation effective date to the publication date, and to consider whether notification to the International Trade Commission is required by 19 U.S.C. § 1677j(e)(1) in the light of its prior assessment and conclusions regarding the limited scope of the Orders. See Remand Order at 1402–06. Commerce allowed Yuantai to correct its translation error and allowed IKEA to submit its rebuttal brief but did not assess either. Remand Results at 16–17, 19–20. In view of Commerce's revised determination, these issues are now moot and the court does not address them. See Changzhou Trina Solar Energy Co. v. United States, Slip Op. 20-109, 2020 WL 4464251, at *2 (CIT Aug. 4, 2020) (noting that a change in Commerce's determination can render issues moot that would otherwise need to be addressed).

was not circumventing the Orders. See Remand Results at 4–5. Specifically, Commerce accepted information from Shelter Forest regarding the composition of its glue and linked this evidence to evidence of the CARB-labeled plywood products that constitute inquiry merchandise. See Remand Results at 11–14.[5] Thus, Commerce concluded on remand that inquiry merchandise was commercially available prior to December 8, 2016, and revised its circumvention determination accordingly. Id. at 14.

The Coalition challenges Commerce's negative circumvention determination on two bases. First, the Coalition argues that Shelter Forest did not provide sufficient evidence of the composition of its glue and that Commerce failed to sufficiently consider evidence on the record that undermines its conclusion. See Coalition Br. at 8–12. Second, the Coalition argues that if Shelter Forest produced inquiry merchandise prior to December 8, 2016, it obscured it from the public as a trade secret, and therefore, such merchandise cannot be considered commercially available under 19 U.S.C.§ 1677j(d). See Coalition Br. at 13–14. For the reasons stated below, Commerce's negative circumvention determination is sustained.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(vi). The court "hold[s] unlawful any determination, finding, or conclusion

---

[5] The extremely narrow definition of inquiry merchandise, resulting from Commerce's adoption of the exact definition proposed by the Coalition, seems to have imposed nearly impossible requirements on respondents to show inquiry merchandise was commercially available prior to December 8, 2016. Compare Petitioner's Request, at 7–9; with Initiation Notice, 83 Fed. Reg. at 47,883, 47,885. Because Shelter Forest was able to submit evidence meeting these requirements, Commerce did not directly address why this narrow definition of inquiry merchandise was reasonable. See Remand Results at 17–18. The court does not address this issue as Commerce revised its determination, but notes that an affirmative circumvention determination that is based on unreasonable inquiry merchandise requirements would not be consistent with 19 U.S.C.§ 1677j(d).

found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C. § 1516a(b)(1). The court assesses whether Commerce's actions are reasonable on the record as a whole to determine whether Commerce's actions are supported by substantial evidence. See Nippon Steel Corp. v. United States, 458 F.3d 1345, 1352 (Fed. Cir. 2006). Remand redeterminations are "also reviewed for compliance with the court's remand order." Xinjiamei Furniture (Zhangzhou) Co. v. United States, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (citation and quotation marks omitted).

## DISCUSSION

On remand, Commerce considered additional evidence provided by Shelter Forest that inquiry merchandise was commercially available prior to December 8, 2016. See Remand Results at 11–14, 20–23. Based on Shelter Forest's resubmission on March 8, 2021, of its July 3 letter, which included details of the composition of Shelter Forest's E0 glue and production and sales documents from 2012, Commerce determined that Shelter Forest demonstrated that inquiry merchandise was commercially available prior to December 8, 2016. Id. at 11–14. Specifically, Commerce reviewed the contents of Shelter Forest's March 8 letter submission, which included sales and production documents, a sworn declaration from President Ryan Loe, and:

> (1) Shelter Forest's supplier's recipe for E0 resin from 2012, demonstrating that the glue was a majority urea-formaldehyde; (2) "Materials Out-Going Form{s} for Production" showing Shelter Forest's supplier produced radiata pine plywood with E0 grade urea-formaldehyde resin; (3) inspection reports that tested the emissions of the plywood and confirmed that it met the low-emissions criteria to be categorized as "E0"; (4) "Outbound Delivery Order" forms illustrating that this radiata pine plywood with E0 ureaformaldehyde glue was leaving the supplier's premises; (5) the supplier's CARB certificate, that was valid at the time of the production; (6) bills of lading that stated the merchandise was CARB-2 certified; and (7) supplier invoices that said the merchandise was CARB-2 certified.

Id. at 21; see also Shelter Forest's Response to Department Request, C.R.R. 1, P.R.R. 6 (Mar. 8, 2021) ("March 8 Letter Submission").

In response to comments by the Coalition, Commerce subsequently requested supplemental information from Shelter Forest regarding its glue. See Letter from Commerce, Supplemental Questionnaire, C.R.R. 6, P.R.R. 17 (Mar. 9, 2021). In its response, Shelter Forest discussed the later addition of melamine in the glue process, which Shelter Forest stated was part of a trade secret, and explained the apparent discrepancy in the marketing materials. See Shelter Forest's Supplemental Questionnaire Response at 2–5, 9, Exhibit 1 at 4–5, C.R.R. 11–12, P.R.R. 29–30 (Mar. 25, 2021) ("Shelter Forest SQR"). The Coalition maintained that Shelter Forest's submissions "repeatedly contradicted other record information as well as [Shelter Forest's] own documentation" such that it was not reasonable for Commerce to rely on them in its determination. Coalition's Comments on Shelter Supplemental Questionnaire Response at 1–6, C.R.R. 13, P.R.R. 35 (Mar. 31, 2021).

Commerce issued a preliminary negative circumvention determination, finding that Shelter Forest's March 8 Letter Submission demonstrated that inquiry merchandise was commercially available prior to December 8, 2016. See Draft Results of Redetermination Pursuant to Court Remand, Consol. Court No. 19-00212, Slip Op. 20-121 (Apr. 5, 2021) at 13–14, 22–23, P.R.R. 36 (Apr. 5, 2021) ("Draft Remand Results").[6] Upon review of the comments submitted by the parties and the evidence submitted, Commerce issued a final negative

---

[6] Plaintiffs and the Coalition provided comments to the Draft Remand Results, through which Shelter Forest and the Coalition continued to spar over whether it was reasonable for Commerce to rely on Shelter Forest's sales and production evidence when its glue recipe and marketing materials did not clearly detail the addition of melamine later in the production process. See Shelter Forest's Rebuttal Factual Information Attachment A at 2, C.R.R. 14, P.R.R. 37 (Apr. 5, 2021) ("Shelter Forest RFI"); Coalition's Comments on Draft Results of Redetermination at 4–7, C.R.R. 15, P.R.R. 45 (Apr. 13, 2021); see also Importer's Alliance Comments on Draft Remand Redetermination, P.R.R. 43 (Apr. 13, 2021); IKEA Supply AG's Comments on Draft Remand Redetermination, P.R.R. 44 (Apr. 13, 2021). Commerce did not agree with the Coalition that there were discrepancies in Shelter Forest's evidence. Draft Remand Results at 19–22.

circumvention determination, concluding that inquiry merchandise was commercially available prior to December 8, 2016, and was not later-developed merchandise circumventing the Orders. Remand Results at 14, 23.

> I. **Commerce's determination that Shelter Forest met the glue requirement of inquiry merchandise and that inquiry merchandise was not later-developed merchandise under 19 U.S.C. § 1677j(d) is supported by substantial evidence.**

The parties dispute whether Shelter Forest adequately demonstrated that it used its E0 glue in CARB-certified plywood products to satisfy the requirements of inquiry merchandise.[7] Commerce found that Shelter Forest's E0 glue was majority urea-formaldehyde. Remand Results at 11; see also March 8 Letter Submission Exhibit 1, Attachment B. Commerce then used sales documents to link the glue production documents submitted by Shelter Forest in its March 8 Letter Submission, to "the documentation Commerce relied on in finding that Shelter Forest had also sold CARB-labeled plywood with face and back veneers of radiata pine." Remand Results at 12–13. Commerce explained its analysis through an example linking production documents with a complete set of sales documents for a specific customer in 2012. See Remand Results at 20–22.

The Coalition challenges Commerce's negative circumvention determination as unsupported by substantial evidence on the basis that (1) Shelter Forest provided inadequate evidence to demonstrate inquiry merchandise because it could not link its E0 glue use to CARB-labeled plywood products prior to 2016, see Coalition Br. at 8–10, and (2) that Commerce did not consider contradictory evidence in making its determination, such that Commerce cannot

---

[7] See Coalition Br. at 1; Gov. Br. at 2; Futuwood Reply at 3; IKEA Reply at 1; Importer's Alliance Reply at 4–5; Shelter Forest Reply at 2.

reasonably conclude that inquiry merchandise was commercially available prior to the Orders, see Coalition Br. at 10–14.

The court sustains Commerce's determinations if they are reasonable and supported by consideration of the whole record. Consolidated Edison v. NLRB, 305 U.S. 197, 217 (1938) (finding that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); see also Nippon Steel Corp., 458 F.3d at 1351–52. Two inconsistent conclusions may be able to be drawn from the evidence, without invalidating Commerce's conclusion. See Zhaoqing New Zhongya Aluminum Co. v. United States, 36 CIT ___, ___, 887 F. Supp. 2d 1301, 1305 (2012). For the reasons that follow, Commerce's determination that Shelter Forest adequately demonstrated that its E0 glue was majority urea-formaldehyde and that it was used in plywood products satisfying all three criteria of inquiry merchandise, prior to December 8, 2016, is supported by substantial evidence.

At issue is whether Shelter Forest's glue satisfies the definition of inquiry merchandise. The Coalition avers that the characteristics of Shelter Forest's E0 glue recipe do not align with the characteristics of the glue used in its proposed inquiry merchandise because melamine was not included in the original glue recipe Shelter Forest provided. See Coalition Br. at 8–11. The Coalition argues that this discrepancy makes Shelter Forest's documentation unreliable to demonstrate that Shelter Forest used majority urea-formaldehyde glue, satisfying the third criteria of inquiry merchandise. See id.; see also Remand Results at 23–25. Commerce's determination that Shelter Forest's plywood products used a majority urea-formaldehyde glue is supported by numerous documents detailing the composition and production process of Shelter Forest's E0 glue, and two sworn declarations by Mr. Loe. See Remand Results at 11–13, 20–23; see also March 8 Letter Submission Exhibit 1, Attachment B; Shelter Forest SQR Exhibit 1.

Commerce found that Shelter Forest's explanation that its practice was to add melamine to the product at the end of production, which is why it was not included in the original glue recipe it provided, was reasonable and supported by documentation on the record. See Remand Results at 26–27.[8] The evidence that Commerce relied on to reach this determination included a production manual from 2011 showing the use of urea-formaldehyde glue and the later addition of melamine, sample purchase orders for inquiry merchandise, and a sworn declaration by Mr. Loe detailing the glue's application in the plywood production process. See Shelter Forest SQR at 3–12, Exhibit 1 at 4–5, Attachment A, D; see also Remand Results at 27.

    Based on this finding that Shelter Forest's E0 glue was majority urea-formaldehyde, Commerce linked the glue to specific CARB-certified radiata plywood sales in 2012 to conclude that inquiry merchandise was not later-developed under 19 U.S.C.§ 1677j(d). See Remand Results at 11–14. Commerce did this by connecting a series of production and sales documentation from 2012, which had unique contract and customer information, that showed Shelter Forest produced and sold CARB-certified radiata pine with E0 glue to a major U.S. retailer. See id. at 11–13, 21–22; March 8 Letter Submission Exhibit 1, Attachments B, C, D; Shelter Forest RFI Attachment A at 3. Commerce found that the E0 glue recipe submitted by Shelter Forest was the glue used in the 2012 sale of CARB-labeled radiata pine and therefore that the 2012 production and sales documentation established the commercial availability of inquiry merchandise. See Remand Results at 25–27.

---

[8] Shelter Forest explained that while modern practice includes introducing melamine into the glue during mixing, in 2012 pre-mixed melamine urea-formaldehyde was not available and melamine had to be added later in the production process. See Shelter Forest SQR at 5, Exhibit 1 at 5.

The Coalition also contends that Commerce has not adequately considered the contradictory information that Shelter Forest provided in its 2012 catalog product descriptions of glues used in its merchandise. See Coalition Br. at 11. The Coalition argues that this casts doubt on whether the glue recipe provided was in fact used in inquiry merchandise. See id. Commerce considered the marketing materials that the Coalition references, but concluded that Shelter Forest's public catalogues did not undermine the submitted sales and production documents for specific sales showing that Shelter Forest produced inquiry merchandise prior to 2016. Remand Results at 28–30. In part because it was undisputed that the marketing materials did not contain a complete or definite description of Shelter Forest's products, Commerce concluded that sales and production documents evidencing specific sales were sufficient to establish that Shelter Forest sold inquiry merchandise, "despite any apparent inconsistencies between those documents and the catalog." See Remand Results at 29–30.[9] The Coalition's assertions regarding Shelter Forest's marketing materials do not undermine the reasonableness of Commerce's factual findings, which are supported by ample evidence on the record. Accordingly, Commerce's determination that Shelter Forest's sales and production documents show that inquiry merchandise was produced prior to December 8, 2016, is reasonable based on the record as a whole and is supported by substantial evidence.

## II. Commerce's determination that Shelter Forest's product was commercially available is supported by substantial evidence.

The Coalition also challenges Commerce's negative circumvention determination as not in accordance with law on the basis that if Commerce finds that the addition of melamine for a

---

[9] Commerce also relied on two sworn declarations that asserted Shelter Forest did not make or use every product shown in its promotional catalog as well as evidence that the addition of melamine to accomplish a certain product improvement was a trade secret at the time. See Remand Results at 28–30; Shelter Forest SQR at 4, Exhibit 1 at 4; Shelter Forest RFI Attachment A at 2.

particular purpose is a trade secret, Shelter Forest's product was obscured from the market and thus not commercially available within the meaning of 19 U.S.C.§ 1677j(d). See Coalition Br. at 13–14.[10] The Coalition cites prior case law that does not address trade secrets to argue that if Shelter Forest's product included trade secret material, the product could not be actually "present in the market at the time of the [ ] investigation." See id. (citing Target Corp. v. United States, 609 F.3d 1352, 1363 (Fed. Cir. 2010) (later-patented technological advancement); Tai-Ao Aluminum v. United States, 43 CIT ___, ___, 391 F. Supp. 3d 1301, 1311 (2019) (later-developed substitute). The Coalition contends that the trade secret component of Shelter Forest's product results in a product that was not commercially available prior to the Orders, making it later-developed merchandise under 19 U.S.C.§ 1677j(d). Coalition Br. at 14. The Importer's Alliance counters that just because Shelter Forest's product contains melamine "does not in itself rebut Commerce's commercial availability finding where the plain language definition of the inquiry does not specify that inquiry merchandise requires the inclusion of melamine." See Importer's Alliance Reply at 13. Because Shelter Forest provided sufficient evidence showing inquiry merchandise was commercially available prior to the Orders, the Importer's Alliance argues, it is irrelevant that melamine was added during the production process of inquiry merchandise. See id. at 13.[11]

---

[10] The Coalition likely did not exhaust this issue. It appears to raise it for the first time in its brief, see Coalition Br. at 13–14, although Shelter Forest first brought up that the use of melamine for a particular purpose was a trade secret in its supplemental questionnaire response dated March 25, 2021, see Shelter Forest SQR at 4, Exhibit 1 at 4, while the agency proceeding was still ongoing. Nonetheless, because the Government does not argue the lack of exhaustion, the court considers the issue, to the degree it is able to do so based on a record that was not developed by the Coalition on this point.

[11] The other parties do not directly respond to the Coalition's argument on this issue.

The purpose of the later-developed merchandise provision is to prevent a substitute product developed after an antidumping or countervailing duty order from circumventing that order, even though it falls outside of its scope in literal terms. 19 U.S.C.§ 1677j(d); see Tai-Ao Aluminum, 391 F. Supp. 3d at 1306 ("Anticircumvention inquiries prevent foreign producers from circumventing existing findings or orders through the sale of later-developed products . . .") (internal citation and quotation marks omitted). Commerce has established a practice of applying a specific commercial availability test to determine whether merchandise is later-developed within the meaning of 19 U.S.C.§ 1677j(d). See Target Corp., 609 F.3d at 1357–60. Courts have upheld Commerce's interpretation and practice as reasonable. Id., 609 F.3d at 1359; see also Tai-Ao Aluminum, 391 F. Supp. 3d at 1311–13.[12] The Coalition has not established that this approach is either unreasonable or an abuse of discretion by Commerce.

The Coalition's attempt to narrow Commerce's discretion regarding the standard for commercial availability in the context of later-developed merchandise is unavailing. The inquiry here under 19 U.S.C.§ 1677j(d) is whether a substitute plywood product made with low emissions glue, which makes it suitable for interior use, was later-developed to circumvent the Orders. Remand Results at 1–2, 5, 18; Petitioner's Request at 6–7; Shelter Forest SQR at 2–3. Nothing of record indicates that melamine is essential to the pertinent inquiry and its addition in the production process is not required to be public knowledge for the merchandise to be found to be commercially available. The trade secret status of one component of the inquiry merchandise has no bearing on whether it was actually "present in the market" because the proprietary nature

---

[12] Commerce's established past practice finds that a product is commercially available if it is either present in the commercial market or "fully developed, i.e., tested and ready for commercial production, but not yet in the commercial market." Target Corp., 609 F.3d at 1358. Commerce cited to this past practice in the Issues and Decision Memorandum accompanying its prior affirmative determination. See I & D Memo at 33.

of this particular component appears irrelevant to the question at hand. See Target Corp., 609 F.3d at 1363. As detailed above, Shelter Forest provided significant evidence on the record establishing that its product was commercially present in the market prior to the Orders, including sales and production documents showing a sale of inquiry merchandise to a major U.S. retailer in 2012. See supra Section I. Commerce's finding that Shelter Forest demonstrated that inquiry merchandise was commercially available prior to December 8, 2016, and therefore not later-developed merchandise under 19 U.S.C.§ 1677j(d) circumventing the Orders is substantially supported and in accordance with law. See Remand Results at 10–31.

## CONCLUSION

For the foregoing reasons, Commerce's negative circumvention determination is sustained. Judgment is entered accordingly.

/s/ Jane A. Restani
Jane A. Restani, Judge

Dated: July 21, 2021
New York, New York